IN THE UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF NEW MEXICO
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 1 2 2000

CLERK

WARREN HARRIS and
ROSE HARRIS,

        Plaintiffs,

v.                      No. CIV 99-748M/RLP

VINCE CRESPIN, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

This is a case pursuant to 42 U.S.C. Section 1983. Plaintiffs accuse Defendants of an unlawful arrest, assault and other unlawful and inappropriate conduct. The case comes up at this time on Defendants' assertion of qualified immunity and Motion for Summary Judgment. Having considered the pertinent facts and law, as well as the arguments of the parties, I find material facts in dispute and deny the motion. Viewing contested facts in the light most favorable to Plaintiffs (as the non-moving party), I also find Plaintiffs' version of the facts supported by evidence and sufficient to state a claim for violation of clearly established constitutional rights and to defeat Defendants' immunity defense.

Because the constitutional issues and the status of the law at the time of alleged events are not seriously contested, this case can only be resolved by a determination of disputed facts and an assessment of credibility. These are not susceptible to summary judgment on any ground. Neither does an immediate appeal in such a circumstance aid the purpose of qualified immunity

or serve the interests of justice; and I do not consider this denial of Defendants' motion raising qualified immunity to be an immediately appealable collateral order. See: Johnson v. Jones, 515 U.S. 304, 313 (1995); Clanton v. Cooper, 129 F.3d 1147, 1152 (10th Cir. 1997). My decision rests solely on factual analyses and does not turn on issues of law. Id. "An order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment." Id. at 1153.

## Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Gaylor v. Does, 105 F.3d 572, 574 (10th Cir. 1997). The facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences arising from the facts must also be drawn in the Plaintiffs' favor. Clanton v. Cooper, supra at 1150. Questions of intent and credibility, however, are matters for a fact finder after a full presentation of the evidence. Gaylor v. Does, supra at 575. Where the facts or testimony produce more than one reasonable inference, the case is not one for summary judgment. Id.

## Qualified Immunity

"[O]fficials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pallottino v. City of Rio Rancho, 31 F.3d 1023 (10th Cir. 1994). "Once a

defendant to a Section 1983 action raises a qualified immunity defense, the burden shifts to the plaintiff to show both facts and law to establish that the defendant is not entitled to qualified immunity." Id. at 1026. "In the context of a summary judgment motion, to prevail against a qualified immunity defense, the plaintiff must 'come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred.'" Id., quoting Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 644 (10th Cir. 1988). "Only if the plaintiff establishes both of these matters does a defendant bear the normal burden of the movant for summary judgment of 'showing that no material issues of fact remain that would defeat his or her claim of qualified immunity." Id.

"In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions." Id. "While the plaintiff need not show that the specific action at issue has previously been held unlawful, the alleged unlawfulness must be 'apparent' in light of preexisting law." Medina v. City and County of Denver, 960 F.2d 1493, 1497 (10th Cir. 1992). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Davis v. Scherer, 468 U.S. 183, 196 (1984).

"To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a consti-

tutional right at all." Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir. 1994). This is a purely legal question. Romero v. Fay, 45 F.3d 1472, 1474 (10th Cir. 1995). It requires "the district court to 'first determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted.'" Id., quoting Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir. 1994). It requires a plaintiff "do more than identify in the abstract a clearly established right and allege that the defendant has violated it." Romero v. Fay, supra at 1475. "Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity. . . and 'demonstrate a 'substantial correspondence between the conduct in question and prior law . . . establishing that the defendant's actions were clearly prohibited.'" Id.

## Existence of a Constitutional Right

Plaintiffs here allege violations of the Fourth Amendment to the United States Constitution, as well as violations of New Mexico law. Plaintiff Warren Harris contends that Defendants Vince Crespin and Ron Madrid, both deputy sheriffs in the Santa Fe County Sheriff's Department, arrested him and held him in a holding cell in the Santa Fe courthouse without any justification, much less with probable cause to believe he had committed or was about to commit a criminal offense. While the First Amended Complaint claims assault, battery, false imprisonment, false arrest, slander, defamation of character and malicious abuse of process, all of these causes of action center on allegations of an arrest without probable cause and a subsequent detention and criminal charge for reasons which included personal animosity rather than any legitimate law enforcement purpose.

The primary questions in this case, then, are whether the arresting officer had probable

4

cause or reasonable grounds to believe he had probable cause to arrest without a warrant and whether after the arrest, the arresting officer had a reasonable basis to detain. In this regard, Plaintiffs' arguments present nothing unique, complex or puzzling in Fourth Amendment law. The essential constitutional standards for seizure of the person are so clearly established, well-known and widely accepted in law enforcement at all levels as to be not at issue: "A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." Id. at 1476.

Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. The existence of probable cause in a particular circumstance is generally determined under a "totality of the circumstances" test, applied practically and nontechnically. Clanton v. Cooper, supra at 1155. An arresting officer is entitled to qualified immunity in a Section 1983 suit "if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero v. Fay, supra. While ordinarily the government bears the burden of establishing the existence of probable cause, where the issue "involves the validity of a warrantless arrest under civil law pursuant to Section 1983, . . . the burden rests on Plaintiff" to demonstrate that statements supporting probable cause are untrustworthy or not to be believed. Id. at 1476, fn 1.

In this case the arresting officer charged Plaintiff with a misdemeanor offense purportedly committed in the officer's presence. Whether or not the arresting officer had probable cause to believe Plaintiff was committing or about to commit disorderly conduct and to arrest Plaintiff without a warrant depends initially on New Mexico law and the elements of the offense, neither

5

of which is contested. Section 30-20-1 NMSA 1978 provides: "Disorderly conduct consists of engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace."

According to the New Mexico Supreme Court, a violation of this statute requires in every instance conduct which is more than violent, abusive, indecent, profane, boisterous or unreasonably loud; it requires conduct which *disturbs the peace*. State v. Oden, 82 N.M. 563, 484 P.2d 1273 (Ct.App. 1971). Adopting the New York view, New Mexico finds this terminology equivalent to requiring a breach of the peace. State v. Florstedt, 77 N.M. 47, 49, 419 P.2d 248, 249 (1966). Again aligning with New York, the New Mexico Supreme Court also concludes there is no common law offense of disorderly conduct: "[u]nless the acts complained of fall clearly within the statute, they are not disorderly." Id.

Words alone are not enough. Id. New Mexico law unquestionably defines "disturbing the peace" as "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." Id. Where there is no evidence of a defendant inciting belligerent behavior, a crowd gathering because of the defendant's conduct, or a defendant causing consternation or alarm, evidence is insufficient to establish the essential elements of a disorderly conduct charge. Id.; State v. Doe, 92 N.M.109, 583 P.2d 464 (1978).

Therefore, by clearly established and well-settled law, disturbing the peace stands as a clear and fundamental requirement of a charge of disorderly conduct. All New Mexico law enforcement officers can be charged with understanding its necessity in finding probable cause to arrest. See e.g.: State v. Florstedt, supra (decided in 1966). Disturbing the peace not only must be

6

demonstrable to establish probable cause and justify an arrest for disorderly conduct, it *clearly* must be present for Defendants to prevail. Id. Without it, Harris was arrested without probable cause, an indisputable violation of his Fourth Amendment rights.

Thus, the facts of this case place a "disturbance of the peace" most critically at issue. A jury's determination on this one point--specifically whether or not Harris' conduct caused others to gather in the courthouse and by this gathering threaten violence, cause alarm or incite belligerence--more than likely will decide the case. If Harris' conduct can be seen as disturbing the peace, the arresting officer's contention of probable cause to arrest is clearly supportable, to the point of conferring qualified immunity. If a jury finds facts which exclude acts on Harris' part that caused a crowd to gather, created general consternation or alarm or incited belligerent behavior, probable cause is lacking because an element absolutely necessary to a charge of disorderly, and therefore probable cause, is noticeably absent. Id.

A long list of disputed facts describes two different happenings. In Defendants' version of the events, Harris' loud and belligerent conduct occurred in a "restricted area;" it not only attracted a crowd, but also threatened the security of the Santa Fe courthouse. If Defendants' version of events is believed, Defendants violated no Fourth Amendment rights and acted so as to be shielded by qualified immunity. In Plaintiff Warren Harris' version, however, he clearly did nothing to constitute a disorderly conduct offense. He was arrested without any semblance of probable cause. His conduct was not belligerent and did not incite belligerent behavior in others. No crowd gathered because of his conduct, and if there was a disturbance, it was caused not by Harris, but by Defendants. If Harris' version is believed, and particularly if for purposes of the present motion all doubt and inferences as to the sufficiency of these allegations are resolved in

7

Harris' favor, Harris' arrest was certainly absent probable cause, and together with other facts by which Harris alleges assault, battery and more, the events complained of constitute clear violations of well-established Fourth Amendment law. All of these issues, however, present questions of fact, rather than questions of law.

## Uncontested Facts

1. On June 6, 1997, at the Santa Fe County Courthouse in Santa Fe, New Mexico, Plaintiff Warren Harris and his brother-in-law, Joseph Tapia, attended a probate hearing to settle the affairs of Rose Harris, Tapia's mother, who had been violently murdered a couple of months before at the age of 72. Both Harris and Tapia are well-known attorneys who practice in New Mexico. The former is a prosecutor in another judicial district and the latter is a criminal defense attorney.

2. Defendants Crespin and Madrid are sheriff's deputies in Santa Fe County. Deputy Crespin is supervisor of security in the Santa Fe County Courthouse and has an office in the building. On June 6, 1997, both Crespin and Madrid were present in the courthouse and on duty at the time Harris and Tapia exited their hearing.

3. Another sheriff's deputy informed Crespin that a bench warrant had issued from the Santa Fe Municipal Court for the arrest of Joseph Tapia. After confirming the warrant, Crespin advised a deputy to escort Tapia to Crespin's office in the courthouse and arrest him.

4. As Harris and Tapia left the probate proceedings, Deputy Bryan Martinez approached both Harris and Tapia and took Tapia to Crespin's office in the courthouse. (Whether a formal arrest legally occurred before or after Tapia was taken to Crespin's office is not clear from the facts.)

5. Crespin's office is adjacent to a "restricted area" which separates the office from nearby courtrooms. Restricted access in this area is a standing policy in the Santa Fe courthouse. The area is generally limited to law enforcement officers, attorneys, prisoners and judges going to and from court.

6. Harris followed Martinez and Tapia through the restricted area to Crespin's office. At some point, Harris demanded to know why Tapia was being arrested. Crespin and Harris then exchanged words. After an unpleasant confrontation, Crespin arrested Harris, removed him to a holding cell in the courthouse and confined him there. Later, Crespin personally transported both Tapia and Harris to the local jail, the Santa Fe County Detention Center. Tapia was booked on the bench warrant and Harris was booked on a charge of disorderly conduct.

7. After the preprinted format, the criminal complaint filed by Crespin and dated "6/9/97" reads in its totality that Harris "did engage in violently abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct, which tended to disturb the peace." (Exhibit A to Defendants' Motion for Summary Judgment) Along with this complaint form, Crespin filed a statement of probable cause. (Defendants' Exhibit B) Crespin also completed an Offense/Incident Report and accompanying Narrative which were dated June 8. (Defendants' Exhibit C)

9. After a trial, Harris was found not guilty of the disorderly conduct charge.

## Defendants' Motion

Defendants' claim of qualified immunity rests on the proposition that Harris' arrest was supported by probable cause, or in the alternative, if Crespin did not have probable cause, his belief that he did was reasonable. By their Answer and Motion for Summary Judgment, Defendants proffer the following facts and legal propositions:

9

A. Harris followed Martinez and Tapia into what Crespin considered a restricted area, a section of the courthouse he had instructed deputies to clear prior to Tapia's arrest. Once in the restricted area, Harris demanded in a loud voice to know why Tapia was being arrested.

B. Crespin told Harris "to lower his voice and calm down," but Harris continued "to yell and a crowd began to gather," at which time Crespin "instructed Harris to either calm down or leave the restricted area." Harris "yelled" at Crespin, "became verbally abusive," and refused to leave the area. Harris came so close to Crespin as "to be physically threatening."

C. Crespin was concerned that the noise level caused by Harris' conduct "might interfere with the ability of other law enforcement officials to adequately carry out their duties and would disrupt the nearby courtrooms." Crespin was also concerned to maintain security in the restricted area because "between 15 and 30 in-custody prisoners and several juveniles" were in custody in the area at the time and "[p]risoners will take advantage of any disruption to escape if they can."

D. "After repeated warnings to calm down, leave, or be arrested," Crespin arrested Harris for disorderly conduct, instructed another deputy to handcuff him and escort him to a courthouse holding cell.

E. "The sole proximate cause of plaintiff Warren Harris' alleged injuries is his own unlawful, disorderly, disruptive and unreasonable behavior at the Santa Fe County Courthouse."

In conjunction with the Motion for Summary Judgment, Defendants include as exhibits handwritten statements by persons who were present in the Santa Fe Courthouse on June 6, and who purportedly observed all of some of the events at issue. One of these statements, which is not sworn, indicates that Crespin asked Harris several times to quiet down before he arrested him, but Harris did not do so. Another unsworn statement indicates that the witness heard male

voices (without identification or an indication of who might have been responsible for the confrontation), Harris saying loudly that he was a lawyer, and Harris being escorted by a deputy to the courthouse holding cell. Unsworn statements by other sheriff's deputies indicate loud behavior on Harris' part, a crowd in the courthouse able to observe the confrontation between Harris and Crespin, and Crespin's demand that Harris "clear the area."

Plaintiffs, on the other hand, have filed sworn affidavits by witnesses who dispute the witness statements cited by Defendants. Plaintiffs allege:

1. Harris, who is Chief Deputy District Attorney for New Mexico's Thirteenth Judicial District, reasonably demanded the reason for Tapia's arrest, but Crespin refused to provide one. Eventually, Crespin informed both men that Tapia was being arrested on a bench warrant.

2. Crespin demanded Harris stay out of the way; and when Harris did not do as Crespin told him to do, Crespin threatened Harris in an abusive manner, pushed him and "in a loud and boisterous voice announced" he was taking Harris into custody. Crespin put Harris in handcuffs and eventually locked him in the holding cell.

3. Any resulting disturbance in the courthouse was caused solely by Crespin, who acted in a "loud, abusive, and forceful" manner "where numerous members of the public and attorneys" could observe. Further, any disturbance in the courthouse did not rise to "disturbing the peace," and Defendants' descriptions of the events in this regard are misleading.

4. Harris' conduct was reasonable under the circumstances and he clearly and obviously committed no criminal offense. Crespin arrested and detained Harris out of anger, hubris or personal animosity, but without any basis in fact or in law.

5. Even though a district judge who had learned of Harris's detention in a holding cell

11

ordered Crespin not to remove Harris from the premises of the courthouse. Crespin took Harris to the Santa Fe County Detention Center and had him booked on a criminal charge of disorderly conduct. Afterwards, Defendant Madrid held a press conference to inform local news reporters that Harris had been arrested for disorderly conduct.

6. Crespin's actions placed Harris in fear of receiving an immediate battery.

7. Crespin invented a criminal charge and filed a formal criminal complaint only as an afterthought, knowing at the time that the charge was without merit, but wanting to harass Harris and to deter any complaint from Harris which might charge Crespin with unlawful conduct.

8. The conduct of Crespin and Madrid "was without justification, privilege, excuse, or consent."

Without doubt, what Plaintiffs state and support with materials pursuant to Fed.R.Civ.P. 56 is sufficient to establish the violation of a clearly established constitutional right and to defeat Defendants' Motion for Summary Judgment. Beyond the allegations themselves, more than one circumstance in the record lends credence to Harris' version of the facts.

First, Crespin's statements regarding events and describing the scene on June 6 are not consistent. He states differently in his deposition than in his sworn criminal complaint. He states differently in his affidavit which accompanies the Motion for Summary Judgment than in his deposition. Because these differences (a) go to the scene in the courthouse at the time Crespin was confronted by Harris, (b) state essential matters inconsistently, on the one hand, that Harris used language which was profane and abusive, and on the other, that he did not and that the language Harris used was merely boisterous, (c) provide differing pictures of the purpose of the "restricted area," (d) infer with varying degree that courtrooms may or may not have been

disturbed by the commotion and that prisoners were or were not in a position to present a hazard to security officers, and (e) contradict the existence of a crowd gathered because of the confrontation, all of the apparent contradictions reach to materiality and are relevant both to credibility and to whether or not Crespin observed a disturbance of the peace.

Secondly, even though in his deposition Crespin states that he prepared the criminal complaint against Harris at the detention center the day he took Harris for booking, some question exists whether Crespin's charge of disorderly conduct and the filing of the criminal complaint were timely. The essential facts in this respect are undisputed. Both sides, as well as the criminal complaint, report the date of the incident as June 6; the criminal complaint indicates on its face a filing date of June 9. New Mexico Rule of Criminal Procedure for the Magistrate Courts states at 6-201D:

> In all criminal cases, including cases which are not within magistrate court trial jurisdiction, if the defendant is arrested without a warrant, a criminal complaint shall be prepared and given to the defendant prior to transferring the defendant to the custody of the detention facility. If the defendant is in custody, the complaint shall be filed with the magistrate court at the time it is given to the defendant. If the court is not open at the time the copy of the complaint is given to the defendant, and the defendant remains in custody, the complaint shall be filed the next business day of the court.

Third, the criminal complaint states only a legal conclusion and provides no facts whatsoever to support the "disturbing the peace" element of the charge. Those statements which support Crespin's judgment that Harris was disturbing the peace apparently came together, or at least came to expression, several days after the events at issue. Some certainly leave open the question of how much these statements may have come together in a lawyer's office after suit

13

was filed. (See e.g.: Plaintiffs' Exhibit 1 to the Response to Motion for Summary Judgment, Deposition of Vince Crespin, at p. 16.) When left to his own words, Crespin at times denies the basic tenets of his position:

> Q: Other than being very loud, was he engaged in any other conduct which was otherwise disorderly?
> A: Just that which is listed in the statute.
> Q: And nothing else except being loud.
> A: No. (Plaintiff's Exhibit 1, Deposition of Vince Crespin, at p. 30)

Finally, absent clear proof that Harris' actions as Crespin describes them presented a real and imminent threat of disruption inside the Santa Fe County courthouse, the exigencies of the circumstances are highly likely to weigh in Harris' favor. Not only did Harris and Tapia appear in the Santa Fe courthouse for a difficult and highly emotional hearing, Crespin and Madrid knew who they were and how to find them. With only a minimal amount of compassion and practicality, Crespin could have noticed Tapia of the existence of the bench warrant and instructed him to take care of it with the Municipal Court or could have instructed deputies to seek out Tapia at a later time. Where by any standard the warrant did not issue for a serious offense, a reasonable person must ask why sheriff's personnel chose the most dramatic of alternatives in the first place, feeling compelled to arrest Joseph Tapia in a busy courthouse on a most burdensome day.

Apart from all else, then, elemental questions will play in this case. Especially considering the high probability (because of the notoriety of Rose Harris' violent death) that sheriff's deputies in the courthouse knew exactly why Harris and Tapia appeared for a probate hearing, the obviously difficult nature of their presence in the courthouse, and Harris' understandable shock and concern at his brother-in-law's unexpected arrest, Crespin, it would seem, might have

14

anticipated Harris' response, even his overreaction, as well as the rapid escalation of events after the initial confrontation. Knowing Harris to be a prosecutor by profession, it is hard to believe that Crespin considered Harris' conduct typical or that Crespin could have thought Harris habitually disrespectful of police authority. Even if Harris' conduct indicated more aggression or more emotion than Crespin considered appropriate, and even if Crespin's worst descriptions of Harris' conduct are accurate, considering all the circumstances, it would seem Crespin might have responded with more restraint. It is difficult to believe, considering the whole of the situation, that Crespin could not have made some allowance for Harris' state of mind and responded in some way other than arrest. An alternate response would not only have been humanitarian, but prudent. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Guffey v. Wyatt, 18 F.3d 869 (10th Cir. 1994).

All of these considerations and more, whether spoken or not, are likely to weigh on jurors' minds. Despite the importance of qualified immunity in defense of worthy public officials, the weight of the facts and legal authority is not enough in this instance to carry Defendants' motion. By all the facts and circumstances, a reasonable jury could find for the Plaintiffs and the Motion for Summary Judgment must be denied.

## Supervisory Liability

In addition to the claims discussed, Plaintiffs also allege a failure to supervise and train. Here Plaintiffs name the Board of County Commissioners of the County of Santa Fe and the Santa Fe County Sheriff, Benjamin Montano. Again, accepting Plaintiffs' allegations as true, what Plaintiffs submit pursuant to Rule 56 is sufficient to put material facts at issue and defeat

Defendants' Motion for Summary Judgment. For all the same reasons that this case is not susceptible to summary judgment in favor of the deputy sheriffs, it is also not susceptible to summary judgment on other claims. Where the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a motion for summary judgment must be denied. Johnson v. Jones, supra at 315.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is denied.

_____
SENIOR UNITED STATES JUDGE