IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WARREN HARRIS,
and ROSE HARRIS,

    Plaintiffs,

vs.                                                CIVIL NO. 99-748 RLP/DJS

VINCE CREPIN, RON MADRID,
BENJAMIN MONTANO, Sheriff,
Santa Fe County Sheriff's Department,
personally and in his official capacity,
BOARD OF COUNTY COMMISSIONERS
of County of Santa Fe, and SANTA FE
COUNTY SHERIFF'S DEPARTMENT,

    Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** having come before the court for a trial on the merits on December 7 and 8, 2000; the court, having heard the trial on the merits and after a full review of the testimony and exhibits received, makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

### FINDINGS OF FACT

1.    Plaintiffs Warren Harris ("Harris") and Rose Harris, are husband and wife.

2.    Defendant Vince Crespin ("Crespin") is a Deputy Sheriff with the Santa Fe County Sheriff's office. On June 6, 1997, Crespin was employed in his capacity as Deputy Sheriff with the Santa Fe County Sheriff's office, and was acting within the course and scope of his employment and under color of state law.

3.    Crespin's duty station on June 6, 1997 was at the state district courthouse

in Santa Fe County. He was responsible for security at the courthouse.

4. Harris accompanied Rose Harris to the Sante Fe County Courthouse on June 6, 1997, where she attended a probate hearing before state District Judge Michael Vigil, whose chambers were located on the second floor of the courthouse. The probate hearing involved the potential involuntary sale of real estate in Santa Fe County known as the Tapia building. The hearing lasted 45 minutes and was closed to all but the immediate family. Thus, Harris did not attend the probate hearing. Harris waited for Rose Harris outside the courtroom of Judge Steve Herrera on the first floor of the courthouse.

5. Harris witnessed three uniformed deputies escorting his brother-in-law, Joe Tapia, downstairs from the upstairs courtroom. Harris was quite concerned about the status of his brother-in-law, given the emotional setting of the probate hearing before Judge Vigil and the presence of three uniformed guards escorting him.

6. Harris made multiple inquiries as to why Mr. Tapia was being arrested when Mr. Tapia arrived downstairs with the uniformed deputies.

7. Harris directed his inquiries to Crespin, who was in charge of security at the courthouse. In making his inquiries, Harris spoke in a loud, but not unreasonably loud, voice that attracted the attention of a number of onlookers including a number of lawyers awaiting hearings. Crespin told Harris that Mr. Tapia was being arrested pursuant to a bench warrant. Harris then inquired as to the basis for the bench warrant. Crespin responded by telling Harris to leave his office. Harris continued to assert his right to know why the deputies were arresting his brother-in-law while leaving Crespin's office.

8. Crespin then arrested Harris, and charged him with disorderly conduct in

violation of §30-20-1(a) N.M.S.A. 1978. Crespin had Harris placed in handcuffs and taken to the jail holding cells where Mr. Tapia was being held, and ultimately to the Santa Fe County Detention Center. Harris was held in custody for four hours.

9. On June 6, 1997, Harris was a career state prosecutor and has continued in that career. He has had over 30 years of prosecutorial experience and has worked in three New Mexico judicial district courts as an assistant district attorney and has served the state of New Mexico as an assistant attorney general.

10. On June 6, 1997, Harris was employed as the Chief Deputy District Attorney for the Thirteenth Judicial District, and was hired in that capacity because of his impressive depth of prosecutorial experience and his excellent reputation in the law enforcement community.

11. Following his arrest and pending his prosecution for disorderly conduct, Harris was concerned that the incident would reflect poorly on the Thirteenth Judicial District Attorney's Office, and would adversely affect his ability to do his job.

12. Harris' arrest on June 6, 1997, was a significant traumatic event for him. He perceived the arrest and detention as threatening to his physical integrity and well being and as a significant restriction of his ability to move about freely. He was concerned he would come into contact with individuals he had prosecuted.

13. Harris' arrest was reported in several newspapers in general circulation and broadcast over several area radio stations.

14. The arrest, disorderly conduct charge and the ultimate trial had a devastating effect on Harris. These events:

      A.      Compromised his ability to practice law;

      B.      Adversely impacted his ability to deal with police and other law enforcement personnel as required of him as a prosecutor;

      C.      Resulted in a high rate of absenteeism and inability to concentrate on his case load and administrative duties.

15. To a reasonable degree of medical and psychological probability, Harris suffered from severe clinical depression and post-traumatic stress disorder proximately caused by his arrest and subsequent prosecution.

16. Mrs. Harris suffered a loss of consortium with Harris as a result of the severe clinical depression and post traumatic stress disorder suffered by Harris.

17. Harris and Mrs. Harris received medical care from Dr. Roland Sanchez as a result of Mr. Harris' depression and post-traumatic stress disorder, incurring bills in the amount of $1,148.00. This treatment, and the fees incurred, were reasonable and necessary.

18. Harris received psychological care from Clifford Morgan, Ph.D. in order to treat his depression and post traumatic stress disorder, incurring bills in the amount of $2,048.00. This treatment, and the fees incurred, were reasonable and necessary.

19. The criminal complaint Crespin filed against Harris was tried before the Santa Fe County Magistrate Court on February 11, 1998. The court granted a defense motion for directed verdict after the state had rested its case, and the criminal charges against Harris were dismissed with prejudice.

20. Harris incurred attorney's fees and costs totally $10,213.55 related to the

defense of the case brought against him in magistrate court.

21.     Harris was asked to resign from his position as Chief Deputy District Attorney for the Thirteenth Judicial District in June 1999 as a consequence of his inability to effectively and efficiently function in his job and because of his high rate of absenteeism.

22.     Harris' work-life expectancy is two additional years.

23.     Harris lost the use of a vehicle as a result of his termination from the District Attorney's Office for the Thirteen Judicial District.

24.     Harris was unemployed for one month after his resignation from the District Attorney's Office for the Thirteen Judicial District.

25.     As a result of his termination from employment with the Thirteenth Judicial District, Harris had to take a lower paying job with the District Attorney's Office for the Second Judicial District, earning $6,689.28 less per year than he was earning at the Thirteenth Judicial District Attorney's Office.

26.     Harris and Mrs. Harris have incurred the following compensatory damages as a result of Harris' arrest and prosecution:

        A.     Mr. Harris:                                          $77,480.90

        B.     Mrs. Harris (loss of consortium)   $ 5,000.00

## CONCLUSIONS OF LAW

1.     The court has subject matter jurisdiction of all claims presented by the parties.

2.     The court has personal jurisdiction of the parties, and venue is properly laid in this court.

3.   Crespin did not have probable cause to arrest Harris for disorderly conduct in violation of New Mexico Law on June 6, 1997.

4.   Crespin's arrest of Harris violated law which was clearly established on June 6, 1997. As cited in Judge Mechem's Memorandum Opinion and Order denying summary judgment (Docket No. 26) filed on May 12, 2000, individuals are free to verbally oppose the police without risking arrest. See *Guffey v. Wyatt*, 19 F.3d 869 (10th Cir. 1994). Thus, Crespin is not entitled to qualified immunity.

5.   Crespin's arrest of Harris violated Harris' constitutional rights protected by the Fourth Amendment to the United States Constitution.

6.   Crespin's conduct constituted the torts of assault and battery, false imprisonment and false arrest under New Mexico law.

7.   As a proximate result of Crepin's conduct, Plaintiffs have suffered total damages in the amount of $82,480.00.

8.   Plaintiffs are entitled to their attorney's fees and costs incurred in the action pursuant to 42 U.S.C. §1988.

9.   There is no evidence to support a finding of liability against the Board of County Commissioners and the Santa Fe County Sheriff's Office. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

10.   The Board of County Commissioners and the Santa Fe County Sheriff's Department are entitled to dismissal with prejudice.

**IT IS SO ORDERED.**

_____
RICHARD L. PUGLISI
United States Magistrate Judge
Sitting by designation